### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

KRISTIN KATHERINE BAISCH RICKER, on behalf of herself and others similarly situated

        Plaintiff,

      vs.

INSURANCE PIPELINE INC,

        Defendant.

Case No. 1:26-cv-02263

### PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS

### INTRODUCTION

Defendant Insurance Pipeline Inc. seeks dismissal by asking the Court to disregard Plaintiff's well-pled factual allegations and resolve disputed factual issues in Defendant's favor at the pleading stage. The Complaint alleges that Defendant repeatedly placed telemarketing calls to Plaintiff's Illinois cellular telephone number, discussed Defendant's insurance products, Plaintiff spoke to Defendant's representative "Natasha," and provided Defendant's website address and callback number during the calls. ECF No. 1 ¶¶ 22-31. Those allegations plausibly establish both direct TCPA liability and specific personal jurisdiction in Illinois. These allegations are also bolstered by the Plaintiff's declaration. *See* Exhibit 1.

Defendant's motion improperly attempts to convert factual disputes concerning the source of the calls into pleading deficiencies. Rule 12 does not permit dismissal under those circumstances. At this stage, Plaintiff need only plausibly allege that Defendant initiated the calls

1

and purposefully directed conduct into Illinois. Plaintiff has done so. The Motion to Dismiss should therefore be denied in its entirety.

## BACKGROUND

Plaintiff is an Illinois resident whose cellular telephone number has been listed on the National Do-Not-Call Registry since August 15, 2005. ECF No. 1 ¶¶ 8, 14-21. Plaintiff alleges that despite the registration of her telephone number on the National Do-Not-Call Registry, Defendant Insurance Pipeline Inc. repeatedly placed telemarketing calls to her Illinois cellular telephone number in connection with the marketing and sale of insurance-related products and services. ECF No. 1 ¶¶ 22-37. Specifically, Plaintiff alleges that Defendant placed telemarketing calls to Plaintiff on February 4, 2025 and April 24, 2025. ECF No. 1 ¶¶ 22, 26. During the calls, the callers identified the company as "Healthcare Insurance," which Plaintiff alleged is a trade name and/or marketing name used by Defendant in connection with its insurance solicitation activities. ECF No. 1 ¶ 24. During the April 24, 2025 call, the caller discussed insurance products offered by Defendant and transferred Plaintiff to "Natasha," who identified herself as associated with Defendant. ECF No. 1 ¶¶ 27-28. Plaintiff further alleges that Natasha provided Defendant's website address, theinsupipeline.com, along with Defendant's callback number, (888) 702-3773. ECF No. 1 ¶¶ 29-30. Plaintiff's declaration confirms that she understood from the contents of the calls, the transfer to Natasha, the website address provided, and the callback number provided that the calls originated from Insurance Pipeline Inc. Ricker Decl. ¶ 20.

Plaintiff additionally confirms that she received the calls while physically present in Illinois and that the calls attempted to market insurance-related products and services to her. Ricker Decl. ¶¶ 8, 11, 19. Plaintiff further attests that following the April 24, 2025 call, she received additional telemarketing calls associated with Insurance Pipeline Inc. Ricker Decl. ¶ 18.

## **ARGUMENT**

**A. Plaintiff Plausibly Alleged That Defendant Directly Initiated the Telemarketing Calls.**

Plaintiff plausibly alleged that Defendant Insurance Pipeline Inc. directly initiated the telemarketing calls at issue. The Complaint alleges that Defendant placed telemarketing calls to Plaintiff on February 4, 2025 and April 24, 2025. ECF No. 1 ¶¶ 22, 26. Plaintiff alleged that the callers discussed insurance products offered by Defendant. ECF No. 1 ¶ 27. Plaintiff further alleged that she spoke to "Natasha," who identified herself as calling from Defendant. ECF No. 1 ¶ 28. Plaintiff also alleged that Natasha provided Defendant's website address, theinsupipeline.com, and Defendant's callback number, (888) 702-3773. ECF No. 1 ¶¶ 29-30. Plaintiff further alleged that Defendant continued placing telemarketing calls to Plaintiff following the April 24, 2025 call. ECF No. 1 ¶ 31.

Plaintiff's declaration further reinforces the plausibility of direct liability. Plaintiff confirms under oath that during the April 24, 2025 call, the caller discussed insurance products offered by Insurance Pipeline Inc., and Plaintiff spoke to "Natasha," and that Natasha identified herself as associated with Insurance Pipeline Inc. Ricker Decl. ¶¶ 12-16. Plaintiff further confirms that Natasha provided Defendant's website address, theinsupipeline.com, along with Defendant's callback number, (888) 702-3773. Id. Plaintiff additionally attests that, based upon the contents of the calls, the transfer to Natasha, the website address provided, and the callback number provided, Plaintiff understood that Insurance Pipeline Inc. directly placed the telemarketing calls to her. Ricker Decl. ¶ 17. These sworn factual allegations further distinguish this case from the speculative pleading arguments Defendant advances and provide additional factual support for the reasonable inference that Defendant itself initiated the calls at issue.

Courts have consistently held that such allegations suffice to state a plausible claim of direct TCPA liability. *See e.g. Smith v. American-Amicable Life Insurance Co. of Texas*, No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (allegations that plaintiff was told he was "speaking with American-Amicable" and offered insurance benefits sufficient to state a claim); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action"); *Chinitz v. Intero Real Estate Services*, No. 18-cv-05623, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) (holding that allegations that sales associates identified the defendant's real estate company during telemarketing calls supported a plausible inference of direct liability). These decisions confirm that Plaintiff's well-pled factual allegations more than clear the Rule 12(b)(6) plausibility threshold and distinguish this case from the authorities Defendant relies on.

Although Plaintiff must allege either a direct or vicarious liability theory of TCPA liability, the bar for the Plaintiff is not as high as the Defendant makes out. As another court recently held while denying a similar motion to dismiss:

> Alleviate is right about the legal requirement, but wrong that the complaint is insufficient to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-27. Taking these allegations as true, as I must at this stage, and making all reasonable inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call. . . . Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf.

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025). Thus, Plaintiff's allegations far exceed this bar and courts have similarly held as much. *See e.g. Escano v. Symmetry Fin. Grp. of N.C., LLC*, No. 2:21-cv-0884, 2022 WL 2072875, at *5 (D.N.M.) (denying motion to dismiss in TCPA case holding, "Escano's allegations that the calls were all related to "life and health insurance" and that the content of the calls "was substantially similar enough that a reasonable person would identify the communications as coming from the same entity or group of entities.")

Defendant improperly attempts to isolate the choice of the use of the fictitious name "Healthcare Insurance" while ignoring the remainder of the allegations connecting the calls directly to Insurance Pipeline Inc. Indeed, Plaintiff specifically alleged that "Healthcare Insurance" was a trade name and/or marketing name used by Defendant in connection with its insurance solicitation activities. ECF No. 1 ¶ 24. At the pleading stage, Plaintiff is entitled to reasonable inferences in her favor. Plaintiff identified the dates of the calls, the originating telephone numbers, the caller identification information, the Defendant representative involved in the calls, Defendant's website address, and Defendant's callback number. ECF No. 1 ¶¶ 22-31. Fortunately for consumers bombarded with telemarketing calls, other Courts have similarly held that the allegations are sufficient. *See, e.g., Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694, 2024 WL 964199, at *6 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage . . . Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' . . . Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, solar of America' . . . 'The only real company identified during the calls was Suntuity.'") (cleaned up);

*Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30, 2021 WL 4340424, at *2 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls.").

In sum, this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint on the bases alleged as other courts have done with far less. *See, e.g.*, *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *4 (E.D. Pa. July 21, 2021); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023). The Plaintiff's allegations are more than sufficient to plausibly allege direct liability under the TCPA.[1]

---

[1] The Plaintiff is not currently alleging that the calls were automated or made with a pre-recorded voice. Moreover, Plaintiff's claim under 47 U.S.C. § 227(c) arises from telemarketing calls to a number listed on the National Do-Not-Call Registry and does not require proof of prerecorded voice allegations to survive dismissal. As such, she is not presenting any argument to address that portion of the Defendant's motion.

**B. This Court Has Specific Personal Jurisdiction Over Defendant.**

To decide a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). In deciding a motion to dismiss for lack of personal jurisdiction, the court can consider facts outside the pleadings. *Id.* at 393; *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

A federal court has personal jurisdiction over a non-resident if "either federal law or the law of the state in which the court sits authorizes service of process to that [non-resident]." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 589 (7th Cir. 2021) (quotations and citation omitted). For purposes of this case, when assessing its personal jurisdiction, a federal court ordinarily applies "state law in determining the bounds of [its] jurisdiction over persons." *John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018) (quoting W*alden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)). "The Illinois longarm statute permits the court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing 735 ILCS 5/2-209(c)). Because the Seventh Circuit has found there is no "operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," the court analyzes its jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Illinois v. Hemi Grp.*, 622 F.3d 754, 757 (7th Cir. 2010) (citation omitted).

The Court may exercise personal jurisdiction over defendant using specific jurisdiction only if three requirements are satisfied. *B.D. ex rel. Myers v. Samsung SDI Co.*, 143 F.4th 757, 765 (7th Cir. 2025). First, the non-resident must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

7

laws." *Id.* at 765-66 (citation modified). "The contacts must be the [non-resident's] own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359. Second, relatedness, which is to say that the non-resident's "minimum contacts with the forum state [are] 'suit-related.'" *Curry*, 949 F.3d at 400. On this second consideration, the Seventh Circuit recently observed that the relatedness inquiry "incorporates real limits aimed at protecting foreign defendants from being haled into distant courts for claims only tangentially related to their forum contacts." *Samsung SDI Co.*, 143 F.4th at 766. Third and finally, personal jurisdiction must accord with traditional notions of fair play and substantial justice. *Id.*

Plaintiff sufficiently alleged that Defendant purposefully directed telemarketing activity into Illinois by placing telemarketing calls to Plaintiff's Illinois cellular telephone number. ECF No. 1 ¶¶ 6-7, 22-31. Plaintiff further alleged that the calls giving rise to this action were received in this District. ECF No. 1 ¶ 7. Defendant improperly focuses on the absence of offices, property, or continuous business operations in Illinois. Those allegations concern general jurisdiction, not specific jurisdiction. Plaintiff does not allege that Defendant is "at home" in Illinois. Rather, Plaintiff alleges that Defendant intentionally initiated telemarketing calls into Illinois and caused injury in Illinois. ECF No. 1 ¶¶ 6-7, 22-37.

Plaintiff's declaration further confirms the Illinois-directed nature of Defendant's conduct. Plaintiff attests that she received the telemarketing calls while physically present in Illinois and that the callers attempted to market insurance-related products and services to her during those calls. Ricker Decl. ¶¶ 8, 11, 19. Plaintiff further confirms that she understood from the contents of the calls, speaking to Defendant's representative Natasha, Defendant's website address, and Defendant's callback number that the calls originated from Insurance Pipeline Inc. Ricker Decl. ¶¶ 13-17. These sworn allegations further support the inference that Defendant

8

intentionally directed telemarketing activity toward an Illinois resident in connection with the marketing and sale of its services. At the pleading stage, these facts more than suffice to establish a prima facie showing of specific personal jurisdiction.

Telemarketing calls are intentional communications directed toward a known recipient. Defendant's alleged conduct was not random, accidental, or fortuitous. Defendant purposefully availed itself of conducting activity in Illinois by initiating telemarketing calls to an Illinois resident.

Judge Jenkins denied a nearly identical motion to dismiss earlier this year in *Gratz v. Arcadia Power, Inc.,* 2026 U.S. Dist. LEXIS 11896, *3-5 (N.D. Ill.), holding:

> The court easily concludes that Gratz has made a *prima facie* showing that specific jurisdiction over Arcadia is appropriate in Illinois. *Curry*, 949 F.3d at 401. Gratz alleges a single violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. He alleges that he is an Illinois resident living in Cook County and that he registered his "cellular phone number (XXX) XXX-4609" with the National Do-Not-Call Registry in 2007. [Dkt. 1-1, ¶¶ 4, 16, 20.] According to the complaint, he received calls from Arcadia to his cell phone on various dates in 2024. [*Id.*, ¶ 20.] During one call, an Arcadia telemarketer informed him that "our company Arcadia" had been "assigned" to his area and offered Arcadia's "clean energy program" with a credit of up to 15% on his energy bill. [*Id.*, ¶ 21.] In a declaration, Gratz further explains that during at least one call, a telemarketer offered this credit "as long as you're under ComEd or Ameren" and in a later call the telemarketer again referenced "ComEd or Ameren." [Dkt. 17-1, ¶¶ 4-5.] [*4]
>
> These facts, accepted as true, make it reasonable to infer that Arcadia's telemarketers believed Gratz was in Illinois when placing calls to him. The contents of the calls—specifically the references to Illinois utility provider ComEd—reasonably suggest that Arcadia knew it was calling an Illinoisan to sell an Illinois resident solar services.2 This is sufficient to show that Arcadia purposely availed itself of the benefits of doing business within Illinois. *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) (collecting cases) (act of placing a call to a phone number with an Illinois-affiliated area code and leaving a message that solicits the customer's business constitutes purposeful direction sufficient for jurisdiction). *See also Payton v. Kale Realty, LLC*, 2014 U.S. Dist. LEXIS 118590, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014) (sending a message into the forum state in violation of the TCPA sufficient to confer specific personal jurisdiction.).

9

> As to relatedness, Gratz's alleged injury arises directly out of Arcadia's calls to him in Illinois because Arcadia reached inside the state to contact Gratz, whose phone number is listed on the National Do-Not-Call Registry.
>
> Finally, the court must consider whether the exercise of personal jurisdiction over Arcadia would offend traditional notions of fair play and substantial justice. [*5] *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95, (1945). The factors considered are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). Here, though Arcadia may be burdened by having to defend another action in this state, "out-of-state defendants always face such a burden." *Felland*, 682 F.3d at 677 (emphasis in original). Moreover, Illinois—like all states—has an interest in providing a forum for its residents to seek redress for injuries inflicted by out-of-state actors and injuries suffered within the state. From Gratz's perspective, this is the most convenient and effective forum to seek relief. Thus, exercising personal jurisdiction over Arcadia does not run afoul of traditional notions of fair play and substantial justice.

This Court should hold the same. Like the defendant in *Gratz*, Defendant here intentionally directed telemarketing calls into Illinois and targeted an Illinois resident in connection with the sale of its services. Plaintiff alleged that Defendant repeatedly called her Illinois cellular telephone number, discussed Defendant's insurance products, connected Plaintiff to Defendant's representative "Natasha," and provided Defendant's website and callback number during the calls. ECF No. 1 ¶¶ 22-31. These allegations readily support the inference that Defendant knew it was contacting an Illinois resident and purposefully availed itself of conducting business within Illinois. *See also Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) (placing calls to an Illinois-affiliated number sufficient for specific jurisdiction in TCPA case); *Payton v. Kale Realty, LLC*, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014) (sending communications into Illinois in violation of the TCPA sufficient to establish specific jurisdiction). Plaintiff's alleged injuries arise directly from those Illinois-directed calls, and

10

exercising jurisdiction over Defendant therefore comports with traditional notions of fair play and substantial justice.

## CONCLUSION

Plaintiff plausibly alleged that Defendant Insurance Pipeline Inc. directly initiated telemarketing calls to Plaintiff's Illinois cellular telephone number in violation of the TCPA. The Complaint identifies the dates of the calls, the originating telephone numbers, the contents of the calls, the transfer to Defendant's representative Natasha, Defendant's website address, and Defendant's callback number. ECF No. 1 ¶¶ 22-31. Plaintiff's declaration further confirms those allegations and establishes that Plaintiff received the calls while physically present in Illinois. Ricker Decl. ¶¶ 8-20. Defendant's motion improperly asks this Court to disregard Plaintiff's well-pled factual allegations, resolve disputed factual issues in Defendant's favor, and impose a heightened pleading standard inconsistent with Rule 8 and settled TCPA authority. At this stage, Plaintiff need only plausibly allege that Defendant initiated the calls and purposefully directed conduct into Illinois. Plaintiff has done so. Accordingly, Defendant's Motion to Dismiss should be denied in its entirety. In the alternative, should the Court identify any pleading deficiency, Plaintiff respectfully requests leave to amend.

Dated: May 28, 2026        PLAINTIFF, on behalf of herself
and others similarly situated,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the putative class*