**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRISTIN KATHERINE BAISCH RICKER, *on behalf of herself and others similarly situated*, | ) | |
| Plaintiff, | ) | |
| v. | ) | 26 C 2263 |
| INSURANCE PIPELINE INC, | ) | Judge Charles P. Kocoras |
| Defendant. | ) | |

**ORDER**

Defendant's motion to dismiss [12] is denied. The parties shall file their joint initial status report by November 6, 2026. See Statement.

**STATEMENT**

Plaintiff Kristin Katherine Baisch Ricker brought this action against Defendant Insurance Pipeline Inc. ("Insurance Pipeline") alleging violations of the Telephone Consumer Protection Act ("TCPA"). Insurance Pipeline moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

**I. Background**

The factual allegations are taken from the complaint and are presumed true; all reasonable inferences are drawn in Ricker's favor.

Ricker is a resident of Ogle County, Illinois who registered her phone number, (815) XXX-XXXX, on the National Do Not Call Registry on August 15, 2005. Her

phone number has been on the registry ever since. Insurance Pipeline is a corporation headquartered in Florida.

Ricker alleges that on February 4, 2025, Insurance Pipeline placed an automatically dialed telemarketing call to her cell phone. The call appeared on the caller ID as "HEALTHCARE" from (815) 234-3900. Ricker answered and the individual who spoke referred to the calling company as "Healthcare Insurance." Ricker alleges "Healthcare Insurance" is a trade name or marketing name for Insurance Pipeline.

On April 24, 2025, Insurance Pipeline placed a second call to Ricker's cell phone where the caller again referred to the company as "Healthcare Insurance" and discussed the insurance products. This time, the call came from (815) 234-9996. During this call, Ricker was transferred to "Natasha" who provided Ricker with Insurance Pipeline's website, theinsupipeline.com, and a callback number of (888) 702-3773, which is also associated with Insurance Pipeline.

Following the April 2025 call, "Natasha" continued to place additional calls to Ricker from Insurance Pipeline from telephone number (815) 296-5065. Ricker alleges the purpose of these calls was to advertise and market Insurance Pipeline's business and services.

Ricker alleges the telemarking calls she received from Insurance Pipeline violate the TCPA, which prohibits the initiation of telephone solicitations to residential telephone subscribers on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

Insurance Pipeline moves to dismiss Ricker's complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing the Court lacks personal jurisdiction over Insurance Pipeline and that Ricker's complaint fails to state a claim.

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(2) challenges the court's ability to exercise personal jurisdiction over a defendant. *Liqui-Box Corp. v. Scholle IPN Corp.*, 2020 WL 5593755, at *3 (N.D. Ill. 2020). A "plaintiff need not include facts alleging personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

When a court rules on a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a *prima facie* case for personal jurisdiction. *Id.* at 393 (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010)). If the parties submit affidavits, the court "may weigh the affidavits," but the "plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (quotations omitted).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## III. Discussion

### a. Personal Jurisdiction

Whether the Court has personal jurisdiction over Insurance Pipeline is determined by way of the Due Process Clause of the Fourteen Amendment and Illinois' state long-arm statute. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 589 (7th Cir. 2021) ("[A] federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." (internal citations omitted)). However, given the Seventh Circuit has repeatedly noted there is "no operative difference" between the limits of the Illinois Constitution and the United States Constitution in terms of subjecting a defendant to personal jurisdiction, the question becomes "whether the exercise of personal jurisdiction over the defendants comports with the limits imposed by federal due process." *Curry*, 949 F.3d at 393 (cleaned up).

"To satisfy due process, a defendant must have sufficient contacts with a forum such that it would 'not offend traditional notions of fair play and substantial justice' for that party to be exposed to a court's coercive power there." *B.D. by & through Myers v. Samsung Sdi Co.*, 143 F.4th 757, 765 (7th Cir. 2025) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Specific jurisdiction[1] can be established through a three-prong test: (1) "the defendant must purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[;]" (2) "the suit must arise out of or relate to its forum contacts[;]" and (3) "personal jurisdiction must accord with notions of fairness[.]" *Id.* at 765–66 (cleaned up).

Ricker has made a *prima facie* showing that there is specific jurisdiction over Insurance Pipeline in Illinois. Ricker is a resident of Ogle County, Illinois with a phone number with an Illinois associated area code, (815) XXX-XXXX. According to the complaint, Ricker received calls from Insurance Pipeline on February 4, 2025, from caller ID (815) 234-3900, on April 24, 2025, from caller ID (815) 234-9996, and additional calls following the April 2025 call from telephone number (815) 296-5065, all numbers also with Illinois associated area codes. Ricker alleges the purpose of these calls was to advertise and market Insurance Pipeline's business and services, and when Ricker answered a call, the caller began discussing insurance products.

[1] Ricker argues there is specific jurisdiction over Insurance Pipeline in this case and does not advance an argument for general jurisdiction.

Accepting these facts as true, it is reasonable to infer that Insurance Pipeline's employees believed Ricker was in Illinois. Ricker's phone number has an Illinois-affiliated are code, and the calls from Insurance Pipeline also appeared to be from an Illinois-affiliated area code. Although it is possible that the alleged calls from Insurance Pipeline originated outside Illinois, especially considering the callback number for Insurance Pipeline was given as (888) 702-3773, the use of an Illinois area code on either side of the call suggests it intended to advertise and market its services in Illinois. This is enough to find Insurance Pipeline purposely availed itself of the benefits of doing business in Illinois. *See Gratz v. Arcadia Power, Inc.*, 2026 U.S. Dist. LEXIS 11896, *4 (N.D. Ill. 2026); *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017). "Multiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the purposeful direction test for a court of that state to exercise personal jurisdiction over the defendant." *Lowe*, 233 F. Supp. 3d at 645 (collecting cases). Without such a rule, defendants could freely contact the cell phones of individuals all over the country and never have to defend themselves outside their home forum. *See id*. (citing *Luna v. Shac, LLC*, 2014 WL 3421514, at *4 (N.D. Cal. 2014)). For this reason, Insurance Pipeline's argument that some additional geographic tie or statement of intent to direct its services toward Illinois customers is necessary, is unpersuasive. Insurance Pipeline purposely availed itself of the privilege of conducting activities in Illinois by contacting Ricker at her Illinois phone number.

As to the second prong, Ricker's alleged injury arises directly out of Insurance Pipeline's calls to her in Illinois. *See B.D. by & through Myers*, 143 F.4th at 765. Insurance Pipeline reached inside the state to contact Ricker, whose phone number is listed on the National Do Not Call Registry. *See Gratz*, 2026 U.S. Dist. LEXIS 11896 at *4.

Lastly, the Court must evaluate whether exercising personal jurisdiction over Insurance Pipeline would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co*., 326 U.S. at 316 (internal quotations omitted). There are various factors relevant to such a determination such as, "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Here, there is no unfairness in allowing this suit to proceed in Illinois. Although Insurance Pipeline does face a burden having to defend an action in another state, "out-of-state defendants *always* face such a burden, and there is no suggestion that [Insurance Pipeline's] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents." *Id.* (emphasis in original). Illinois has an interest in providing a forum for its residents to remedy harms inflicted by out-of-state actors within Illinois. For Ricker, having filed suit here, Illinois

is the most convenient forum to seek relief. Nor is there any suggestion that the forum of Illinois would burden the efficiency of resolving this case. Exercising personal jurisdiction over Insurance Pipeline does not offend traditional notions of fair play and substantial justice.

Because Ricker has made a *prima facie* showing that the Court has specific jurisdiction over Insurance Pipeline, Insurance Pipeline's Rule 12(b)(2) motion to dismiss is denied.

**b. Failure to State a Claim**

Insurance Pipeline alternatively argues that Ricker has not pleaded sufficient facts to show that Insurance Pipeline initiated the alleged violative telemarking calls. However, Ricker must simply plead enough facts so the Court can "draw the reasonable inference that [Insurance Pipeline] is liable for the misconduct alleged." *Bilek*, 8 F.4th at 586. "[A] plaintiff must allege 'enough details about the subject-matter of the case to present a story that holds together.'" *Id.*

Where an entity initiates a telemarketing call, direct liability[2] under ICPA applies. *Smith v. State Farm Mut. Auto. Ins.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). Ricker argues she plausibly alleged that Insurance Pipeline directly initiated the telemarketing calls. The complaint states that Insurance Pipeline placed the first automatically dialed

---

[2] Ricker does not advance a claim against Insurance Pipeline under a theory of vicarious liability at this time. Ricker argues that Insurance Pipeline directly made the telemarketing calls, not a third party. Thus, the Court will not analyze vicarious liability or associated agency theories as Insurance Pipeline did.

telemarketing call to her cell phone in February 2025. The call appeared on the caller ID as "HEALTHCARE." Ricker answered and the individual who spoke referred to the calling company as "Healthcare Insurance." Ricker believes "Healthcare Insurance" is a trade name or marketing name for Insurance Pipeline. In April 2025, Ricker alleges Insurance Pipeline placed a second call to her cell phone where the caller again referred to the company as "Healthcare Insurance" and discussed the insurance products. During this call, she was connected with "Natasha" who provided Ricker with Insurance Pipeline's website and a callback number which was also associated with Insurance Pipeline. Following the April 2025 call, "Natasha" continued to place additional calls to Ricker from Insurance Pipeline.

Insurance Pipeline makes much of the difference between the names of "Healthcare Insurance" and "Insurance Pipeline," arguing Ricker failed to allege the calls received were actually from Insurance Pipeline. However, the caller and Ricker discussed Insurance Pipeline's insurance products, and the caller ultimately connected Ricker with an Insurance Pipeline employee, "Natasha," who provided Insurance Pipeline's contact information and website. This chain of communication, as well as a discussion of the insurance products, is enough to plausibly allege that the original telemarking call originated from Insurance Pipeline itself[3]. The difference in names or

[3] This case is distinguishable from *Smith*, where the Court found the defendant not directly liable under TCPA where a third party physically placed the unlawful telemarketing calls. 30 F. Supp. 3d at 771. In this case, despite Insurance Pipeline's issue with the naming, there has been no mention of a possible third party.

use of a trade name does not undercut the plausibility that Insurance Pipeline initiated these calls. *See Taylor v. Suntuity Solar Ltd. Liab. Co.*, 2024 WL 964199, at *6 (M.D. Fla. 2024) (declining to dismiss the complaint where the plaintiff alleged calls from Suntuity Solar, but was provided a generic, fake name, "solar of America" during the telemarketing calls.). Given the Court takes Ricker's allegations as true at this stage, dismissal for failure to state a claim is inappropriate. However, Insurance Pipeline may offer a renewed argument refuting that it directly placed the calls at the dispositive motion stage.

## CONCLUSION

For the foregoing reasons, Defendant Insurance Pipeline's motion to dismiss [12] is denied. The parties shall file their joint initial status report by November 6, 2026. It is so ordered.

Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Date: October 16, 2026